Electronically Filed
Intermediate Court of Appeals
30062
28-OCT-2010
10:31 AM

NO. 30062

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF MG

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-S NO. 05-0025K)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Fujise and Leonard, JJ.)

Mother appeals the Order Awarding Permanent Custody and Establishing a Permanent Plan filed on September 2, 2009 by the Family Court of the Third Circuit[1] (family court) that terminated her parental and custodial rights over MG and awarded Petitioner-Appellee State of Hawai'i Department of Human Services (DHS) with permanent custody over MG.

BACKGROUND

MG was taken into police protective custody on June 1, 2005, amid allegations of neglect by Mother and Father. The June 5, 2005 petition for temporary foster custody reflected that Mother had permitted MG to live for four years with another couple, without providing legal or financial assistance; DHS had other involvement with Mother's three older children by other fathers that resulted in adoption or award of legal custody to the other fathers; Mother and Father, who were not married, were homeless; and Mother had a history of mental health issues, substance abuse, and domestic violence issues. Temporary foster custody was awarded to DHS. Subsequently, after a hearing on

---

[1] The Honorable Aley K. Auna, Jr., presided.

July 1, 2005, MG was allowed to return home under family supervision with a safe family home plan.

DHS was again awarded temporary foster custody of MG effective as of July 24, 2007, after DHS reported that MG did not have a stable residence, Mother was not living with MG, and Mother had not been attending a mental health program in which she claimed to have been participating. Later, DHS moved for placement of MG with paternal grandmother and her husband in Oregon, and such placement was granted effective March 6, 2009. Thereafter, Mother obtained housing and became pregnant with another child with Stepfather, whom she married. The family court joined Stepfather as a party to the case and Mother gave birth to AL on March 14, 2009. Between April 2009 and August 2009, consolidated hearings were held to address the adjudication/disposition of AL as well as the permanent custody of MG. The family court memorialized its award of permanent custody of MG in its September 2, 2009 Order Awarding Permanent Custody and Establishing a Permanent Plan, effective August 14, 2009. Subsequently, the family court issued its October 14, 2009 Findings of Fact and Conclusions of Law. The instant appeal followed.

## ASSERTED ERRORS

Mother raises as points of error on appeal that the family court erred in:

1. admitting and considering the psychological evaluation and testimony of Franklin Acquaro, as reflected in the family court's finding No. 64;

2. consolidating the hearings for adjudication/disposition of AL and the permanent plan of MG;

3. taking judicial notice of the records and files of AL's case; and

4. considering the Sperry affidavit.

## DISCUSSION

1.   Admission of evidence.

     a.   Dr. Franklin Acquaro's report and testimony.

Mother contests finding No. 64 and asserts that the psychological evaluation was required to be performed by a licensed psychologist, that a license is required to engage in the practice of psychology and that, as such, Dr. Acquaro's report was improperly admitted and considered and that Dr. Arquaro should not have been allowed to testify regarding his "unlicensed conclusions and evaluations".

Hawaii Revised Statutes (HRS) Chapter 465 governs psychologists, and although HRS § 465-2 (1993) generally requires a license to hold oneself out as a psychologist or to practice psychology, HRS § 465-3 (Supp. 2009) (footnotes added) exempts

> (2) Any person who performs any, or any combination of the professional services defined as the practice of psychology[2] under the direction of a licensed psychologist in accordance with rules adopted by the board; provided that the person may use the term "psychological assistant", but shall not identify the person's self as a psychologist or imply that the person is licensed to practice psychology;

> .   .   .   .

---

2   HRS § 465-1 (Supp. 2009) states, in pertinent part:

> "Practice of psychology" means the observation, description, evaluation, interpretation, or modification of human behavior by the application of psychological principles, methods, or procedures, for the purpose of preventing or eliminating symptomatic, maladaptive, or undesired behavior and of enhancing interpersonal relationships, work and life adjustment, personal effectiveness, behavioral health, and mental health. The practice of psychology includes, but is not limited to, psychological testing and the evaluation or assessment of personal characteristics, such as intelligence, personality, abilities, interests, aptitudes, and neuropsychological functioning; counseling, psychoanalysis, psychotherapy, hypnosis, biofeedback, and behavior analysis and therapy; diagnosis and treatment of mental and emotional disorder or disability, alcoholism and substance abuse, and disorders of habit or conduct, as well as of the psychological aspects of physical illness, accident, injury, or disability; and psychoeducational evaluation, therapy, remediation, and consultation.  Psychological services may be rendered to individuals, families, groups, organizations, institutions, and the public. The practice of psychology shall be construed within the meaning of this definition without regard to whether payment is received for services rendered.

> (d) Nothing in this chapter shall prevent the
> provision of expert testimony by a psychologist[3] who is
> otherwise exempted by this chapter.

At the time Dr. Acquaro conducted Mother's psychological evaluation on May 1, 2008 (5/1/08 psychological evaluation), Dr. Acquaro "was a doctoral student and doing [his] work at Kapiolani as an intern[,]" in a "post-doc internship [since 2006,]" and was supervised by Dr. Brenda Wong, Ph.D. (Dr. Wong), a licensed clinical psychologist, along with psychologist Dr. Choy. Dr. Wong also reviewed the 5/1/08 psychological evaluation. Thus, at the time Dr. Acquaro wrote the report, HRS § 465-3 did not require his licensure.

At the permanency hearing, the family court qualified Dr. Acquaro, who at that point had been a licensed psychologist for five months, as an expert in psychology over Mother's objection. In admitting the 5/1/08 psychological evaluation, the family court stated, in pertinent part:

> Dr. Acquaro authored this report, even though he was under
> the supervision of another psychologist. He is here
> testifying. He's subject to cross-examination of that
> report, and so the Court will receive it into evidence as
> exhibit, say, it's Exhibit 25.

Mother's counsel subsequently cross-examined Dr. Acquaro on the circumstances surrounding the 5/1/08 psychological evaluation.

Consequently, the family court did not err in permitting Dr. Acquaro's expert testimony[4] and in admitting the 5/1/08 psychological evaluation of Mother, and the family court did not clearly err in its finding No. 64.

---

[3] HRS § 465-1 (Supp. 2009) states, in pertinent part:

> "Psychologist" means a person who offers to the public
> or renders to individuals or to groups of individuals
> services defined as the practice of psychology. A person
> represents to be a psychologist if the person uses any title
> or description of services incorporating the words
> "psychology", "psychological", "psychologist", or
> "psychotherapy", or if the person offers or renders to
> individuals or to groups of individuals services defined as
> the practice of psychology.

[4] "[T]he extent of an expert's knowledge of the subject matter goes to the weight rather than the admissibility of the testimony." State v. Wallace, 80 Hawai'i 382, 419 n.37, 910 P.2d 695, 732 n.37 (1996) (citation omitted).

b.    Judicial notice of AL's case.

Mother argues that the family court erred in taking judicial notice of AL's records and files as reflected in finding No. 35, where such records and files do not constitute facts that are generally known or capable of accurate and ready determination.  Mother asserts that said judicial notice was prejudicial because proof of harm in AL's case was utilized as proof of harm in MG's case, where "[Stepfather] was found to present a risk of harm to his newborn infant," and although no evidence existed of such risk of harm to MG, the finding of harm "becomes universally applicable to [MG]."  Mother also states that no opportunity was provided for objection where "this determination was first announced in the post-hearing announcement of decision".

The family court noted at the permanency hearing on May 29, 2009 that it had "taken judicial notice of FC-S Number 05-0025K[,]" the case of AL.  Mother failed to object at that time, and thus Mother is mistaken in stating that she had no opportunity to object prior to the family court's decision. Accordingly, this point is waived but for plain error review.  As MG's permanency hearing was consolidated, without objection,[5] with AL's adjudication/disposition hearing and HRS § 587-25(a) requires consideration of, inter alia any history of family members or those having access to the family home involving abusive or assaultive behavior or substance abuse, no prejudice to Mother's substantial rights has been demonstrated by Mother.

c.    Sperry Affidavit.

Mother contends that social worker Timothy Sperry's (Sperry) affidavit (Sperry Affidavit), that "outlined and paraphrased 18 profane and derogatory phone calls allegedly made by [Stepfather]" was not admitted into evidence by the family court, but was nonetheless relied upon by the family court where the family court referenced said affidavit in its findings.

---

[5]  See discussion under section 2 infra.

Although it was error to reference the Sperry Affidavit in its findings after excluding it at the hearing, the error was harmless. The Sperry Affidavit was a part of the record prior to the permanency trial, having been received in evidence on February 20, 2009 without objection by Mother. At the permanency trial the family court acknowledged as much, but welcomed cross-examination of Sperry.

More importantly, Sperry testified at the permanency hearing and was subject to cross-examination by Mother's counsel, and Mother does not claim Sperry's testimony conflicts with the statements in the Sperry Affidavit in any material respect. Therefore, the family court's reference to the Sperry Affidavit was harmless error.

### 2. Consolidation of AL's adjudication/disposition hearing with MG's permanent plan hearing.

Citing findings Nos. 35 and 61, Mother argues that MG's hearing was overshadowed by issues of the adjudication/disposition hearing and that the lack of protectiveness involving AL and the actions of Stepfather regarding threat of harm to AL were improperly applied to MG.

Mother does not demonstrate that she objected to consolidation of the adjudicatory hearing for AL and permanency hearing for MG. It is true, as Mother points out, that she objected "to the time limitations" for the hearings, and asked for more flexibility with regard to time. However, Mother did not raise, as she now raises on appeal, that the consolidation would create prejudice to her case insofar as evidence of the risk of harm in AL's adjudication/disposition hearing would overshadow evidence of the risk of harm to MG. Consequently, the point is waived here.[6] Moreover, where Stepfather (AL's father) would be part of MG's family unit should MG return to Mother's custody, Stepfather's conduct as well as Mother's ability to

---

[6] See In re Doe, 99 Hawai'i 522, 537, 57 P.3d 447, 462 (2002) ("failure to object amounts to a waiver of of claim on appeal") (citing, e.g., State v. Staley, 91 Hawai'i 275, 284 n.7, 982 P.2d 904, 913 n.7 (1999)).

protect AL from Stepfather was relevant to MG's permanency decision.

### 3. Inappropriate service plan.

Citing finding No. 60, Mother also argues that DHS "failed to create an appropriate service plan." Mother argues that the plan did not require Mother to obtain a restraining order against Stepfather, and it was held against her as an inability to provide a safe home.

Mother's argument does not appear to relate to any raised point of error and, hence, is not "about [any] point of error[,]" as required under Rule 10(a)(iv) of the Child Protective Pilot Project Rules and, thus, is not properly before this court for decision. Moreover, as Mother does not otherwise establish that she objected to this alleged error below she has waived appellate reivew of the alleged error. Onaka v. Onaka, 112 Hawai'i 374, 386-87, 146 P.3d 89, 101-02 (2006).

### CONCLUSION

For the foregoing reasons, we affirm the Family Court of the Third Circuit's September 2, 2009 Order Awarding Permanent Custody and Establishing a Permanent Plan entered on September 2, 2009.

DATED: Honolulu, Hawai'i, October 28, 2010.

On the briefs:

Julie Kai Barreto,
for Mother-Appellant.

Chief Judge

Mary Anne Magnier,
Deputy Attorney General
Rebecca A. Copeland,
Deputy Solicitor General,
for Petitioner-Appellee.

Associate Judge

Associate Judge

7